### AMERICAN NATIONAL BANK OF WETUMKA v. HIGHTOWER.

No. 25938. Jan. 24, 1939.

Rehearing Denied Feb. 7, 1939.

E. M. Connor, for plaintiff in error.

Byron V. Boone, for defendant in error.

DANNER, J. This is an appeal from a judgment of the court of common pleas of Tulsa county. The parties occupy the same position here as they did in the trial court and will be referred to as plaintiff and defendant.

The action was commenced on January 23, 1934, by the American National Bank of Wetumka, Okla., filing a petition and affidavit in replevin against B. F. Hightower for the possession of certain personal property therein described and in which it alleged a special ownership and the right to immediate possession by virtue of the provisions of a certain chattel mortgage. A copy of the mortgage was attached to the petition and purported to be a mortgage on certain growing crops, livestock, and farm implements.

The plaintiff in this action sought possession solely of the livestock and the farming implements. A motion to quash the service of summons and a general demurrer were successively filed by the defendant and overruled by the court. The defendant thereupon filed an answer and cross-petition wherein, after denying generally the allegations of plaintiff's petition, he alleged he had signed the chattel mortgage in blank and had authorized the completion thereof by the inclusion of certain enumerated livestock and farm implements, and that all other property described in said mortgage had been placed therein without his knowledge or consent, and therefore said mortgage was null and void.

In his cross-petition the defendant alleged that the plaintiff had during the month of December, 1933, by means of threats, duress, and coercion taken possession of certain corn and cotton belonging to defendant and had converted the same to the plaintiff's own use and benefit, and that the reasonable value of said property so taken and converted was the sum of $217.04; and further alleged that on the 22d day of January, 1934, the plaintiff had oppressively and maliciously seized other property belonging to the defendant which was of the reasonable value of $1,415. and that by reason thereof he was entitled to a judgment against the plaintiff for the total sum of $1,632.04, for which amount he prayed judgment, together with $850 as punitive damages on account of the alleged unlawful acts of the plaintiff in taking and converting his property.

Plaintiff in its reply denied all of the allegations of defendant's answer and cross-petition.

The cause was tried to a jury. Motion of plaintiff for directed verdict in its favor at the conclusion of all of the testimony was overruled. The court thereupon instructed the jury and submitted to them a form of verdict which contained five interrogatories; this was done over the objections and exceptions of the plaintiff. Under the form of verdict thus submitted to them, the jury made a finding of the amount due the plaintiff on its notes; a finding that the chattel mortgage held by plaintiff had been materially altered after its execution and delivery; a finding that the plaintiff had maliciously and wrongfully taken possession of a portion of the defendant's property prior to the institution of the action in replevin; a finding that the defendant was entitled to punitive damages in the sum of $50 on account of the acts of the plaintiff, and a finding of the issues generally against the plaintiff and in favor of the defendant. Upon the verdict and answers to the interrogatories thus returned, the court entered a money judgment in favor of the defendant, decreed the chattel mortgage to be void, and entered judgment for defendant for $50 as punitive damages. A motion and an amended motion for new trial were filed and overruled.

Plaintiff appeals and assigns 15 specifica-

tions of error and presents them under six general propositions, which may be further reduced to the following: The first of which is whether a chattel mortgage which has been admittedly signed in blank with authority to insert therein the description of certain personal property is by the inclusion of other property not authorized thereby rendered null and void. Second, insufficiency of evidence to sustain the verdict and error of the court in denying motion of plaintiff for directed verdict.

The plaintiff is a banking corporation located at Wetumka, Okla.; the defendant is a farmer living in Tulsa county near Sand Springs; for a number of years the defendant had had business dealings with the plaintiff and incurred indebtedness which was evidenced by various notes, and which had been secured by chattel mortgages; some three years prior to the events which gave rise to this litigation, the defendant had removed from the vicinity of Wetumka and had finally located in Tulsa county; during the month of December, 1933, the plaintiff, through its agents, had gone to the premises of the defendant and removed therefrom some 330 bushels of corn and approximately a bale of cotton, part of which it sold. Whether this was done with the consent of the defendant was disputed. On the 22d day of January, 1934, the plaintiff, through its agents, again went to the premises of the defendant and sought to remove therefrom a quantity of livestock and farming implements; the defendant objected, and the next day this suit was filed. The evidence as to what took place prior to the institution of this action is in direct and hopeless conflict upon practically every material point.

The testimony of the parties with particular reference to the execution and delivery of the chattel mortgage is conflicting. The plaintiff offered testimony to the effect that all of the matters and things recited and contained in the mortgage were inserted therein prior to its execution and delivery by the defendant. On the other hand, the evidence of the defendant was sufficient, if believed, to justify the jury in finding that the chattel mortgage had been signed in blank and delivered to the plaintiff with authority to complete the same by enumerating therein certain livestock and farm implements and nothing more, and that the authority given had been exceeded by the inclusion of growing crops and other property without knowledge and consent of the defendant. The dispute in this respect thus became a question of fact as to the extent of the authority of the plaintiff to complete the instrument, and whether the same had been completed in accordance with the authority given. The jury by its verdict found that the plaintiff had inserted in said mortgage other and additional property than that which it had been authorized to do.

So, if the agreement of the parties was that the chattel mortgage was to cover only certain specified property and the mortgagee was given authority to include only such property in the mortgage, and the mortgagee thereafter inserted the description of other property in the mortgage without the knowledge and consent of the mortgagor, this would amount to a material alteration of the instrument and would destroy the lien created upon all the property described in the mortgage.

The general rule applicable to such a situation is stated in 1 R. C. L., page 1021, as follows:

"As between the immediate parties, the maker and the person who exceeds his authority, the paper, of course, can only be filled up in conformity with the authority conferred, and the maker cannot be held on the instrument as altered."

This rule is also laid down in the case of Davidson v. Lanier, 18 L. Ed. 377, 4 Wall. 456, wherein the court held:

"The delivery of a bill of exchange signed and indorsed in blank only authorizes the receiver, as between himself and the drawer and indorser, to fill it up in conformity with the authority given him. If there has been no agreement, the authority is general; if there has, it must be pursued. The burden of proof that there was an agreement and that its terms have been violated is, in such a case, upon the defendant; but if he can make the proof it will avail him. No person, unless authorized, either directly or by just inference from the nature of the transaction, can fill up a blank bill for its own benefit. Nor can such a bill be enforced against the drawer and indorser in favor of anyone who takes it in bad faith; that is, with knowledge that it has been filled up without authority or in fraud. 3 Kent Com., 119; 10 Sm. & Marsh. 590."

The case of First Nat. Bank of Van Buren, Ark., v. Hoover (Kan.) 218 P. 1003, is a case where Hoover executed a real estate mortgage to secure his note to a bank. He did not have the exact amount of the note, the due date or the rate of interest, and left blanks for these items. Hoover wrote the cashier of the bank instructing him to fill in the blanks in accordance with Hoover's instructions. Afterwards, and without the knowledge of Hoover, the cashier altered the mortgage by increasing the amount. The court held:

"So here we have a material alteration made in the mortgage after it had once been

filled out in accordance with the instructions of the mortgagor by the cashier of the bank, in whose favor it was drawn, and because the Bank Commissioner (now one of the plaintiffs in this suit) required the Hoover mortgage to secure the entire $6,800. Such an alteration renders the mortgage void."

In case of Forsee v. Zenner (Mo. App.) 193 S. W. 975, we again had the question of whether the mortgage was filled in in accordance with the understanding and agreement of the parties. In this case the jury brought in a verdict for the defendant, and the court held that upon appeal the defendant's evidence would be accepted as true. We quote from the court's opinion:

"Nor can there be any question but that, if the part mentioned in evidence was written into the mortgage after its execution and without defendant's knowledge or consent, the mortgage was invalid and unenforceable."

The case of J. R. Watkins Co. v. Powell, 93 Okla. 219, 220 P. 585, is a case where blanks were left in the contract of guaranty. The defendants pleaded that the contract was null and void for the reason at the time of the execution the words "Nineteen Hundred Dollars and nineteen cents" were not embraced in said contract, and that the same, if in the original, were written therein after the execution thereof. The court held:

"Whether an alteration in a contract is material depends upon whether, after the alteration, it expresses the same contract, and whether it will have the same operation and effect as before. If the change enlarges or lessens the liability, it is material and vitiates the contract.

"In an action for recovery of money based upon a written contract signed by principal and sureties, and the principal pleads alteration in avoidance and the sureties file answer and make same plea, and the evidence is the same as to knowledge and consent, it is error for the court to instruct the jury construing the contract in its application to the sureties different from its application to the principal."

The case of David Plaut Securities Co. v. Cooper (Mo. App.) 258 S. W. 455, is another case where a chattel mortgage was signed in blank. In this case the court held:

"One who signs a blank chattel mortgage and delivers it to the mortgagee thereby constitutes the mortgagee his agent to fill out the blanks in the way contemplated, and the mortgagee has authority to do so."

And also held:

"If a chattel mortgage was signed in blank, and mortgagee, in filling it in, inserted an amount much greater than it was intended should be inserted, the mortgage would be void."

The case of C. I. T. Corporation v. Glennan (Cal. App.) 31 P.2d 430, is a case where the defendant signed a conditional contract of purchase and sale in blank. The parties had agreed on a purchase price of $1,750. After the contract was signed, the blanks were filled in stating the purchase price to be $1,959.94. In this case the court held:

"While the law is well settled that an instrument executed in blank, where there has been an agreement as to the amount of money involved, the holder of the instrument may fill in the blank as to that amount, but there is no authority, either express or implied, to fill in an amount in excess of the stipulated purchase price. Under such circumstances a material change is held to have been made in the conditions of the instrument. In some cases it has been held a forgery to insert a larger sum than is authorized by the agreement, which would mean the oral agreement preceding the signing of the instrument in blank. 8 C. J. 186, and cases cited in the footnotes."

Section 9504, O. S. 1931, 15 Okla. St. Ann. sec. 239, reads as follows:

"The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

In Bailey et al. v. Evans et al., 100 Okla. 278, 229 P. 221, the court said:

"An alteration of a written instrument becomes material when it may have the effect to enlarge, extend, or diminish the duties, liabilities, or obligations of the obligor or promisor, in any manner not in contemplation of the parties at the time of execution, if done without the knowledge or consent of the party to be bound. An instrument so altered ceases to be the contract executed, and the law does not make new contracts nor enforce new and different liabilities not in contemplation of the parties when they contract. This is the general rule, and it is made the rule in this state by legislative enactment. Comp. Stat. 1921, sec. 5083."

A chattel mortgage is an instrument within the contemplation of the statute above quoted. 5 R. C. L. 383.

In Kennedy v. Hull, 14 S. D. 234, 85 N. W. 223, a chattel mortgage was defined as:

"* * * A contract made by the owner by which specific personal property is hypothecated for the performance of an act without the necessity of a change of possession."

See, also, Greenville Nat. Bank v. Evans-Snyder-Buel Co. et al., 9 Okla. 353, 60 P. 249.

We therefore conclude that where a chat-

tel mortgage is signed in blank by the mortgagor, and delivered to the mortgagee with authority to complete the same in a specified manner, it must be completed in conformity with the authority conferred in order to constitute such mortgage a valid obligation between the immediate parties thereto, and if the mortgagee inserts in the mortgage description of other and additional property than that which the mortgagor authorized him to do, the mortgage is void and unenforceable as between the immediate parties. When the instrument was completed in accordance with the authority conferred on the mortgagee, it then became a completed instrument, and the inclusion of other property than that authorized to be included by the mortgagor amounts to an alteration of the written instrument.

Plaintiff next complains of the instruction given, but this assignment of error cannot be reviewed, since the plaintiff failed to preserve exceptions thereto as required by section 360, O. S. 1931, 12 Okla. St. Ann. sec. 578, which provides:

"A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to write at the close of each instruction, 'Refused and excepted to,' or 'Given and excepted to,' which shall be signed by the judge."

In Shobe v. Sykes, 169 Okla. 491, 37 P.2d 908, we held:

"A party desiring to have reviewed on appeal the instructions given in the trial court must comply with the requirements of the statute (O. S. 1931, sec 360). The requirements of this section are mandatory, and unless complied with the instructions complained of cannot be reviewed on appeal."

The plaintiff next complains of the action of the trial court in submitting certain interrogatories to the jury. In this connection it is urged in the brief of the plaintiff:

"There were several issues in this case, as the court will see. One was the amount due; one was the question of alteration, one was the question of punitive damages; one was the question of voiding of the chattel mortgage by demanding more than was due on the note. And in a case of this kind, where all of the above issues were given to the jury by instructions, we can find no reason at all for this interrogatory—it only served to muddle and complicate matters."

We are of the opinion that the argument of the plaintiff refuted the contention advanced. It is apparent that the purpose of the interrogatories was to clarify questions involved, and which were incidental to the real issues to be passed upon by the jury. Under these circumstances, we conclude that the submission of the interrogatories was proper.

While a replevin action is primarily one for the possession of personal property, yet it is sufficiently flexible to authorize a settlement of all equities between the parties arising from or growing out of the main action. Cherry v. Sharpe, 172 Okla. 241, 45 P.2d 70; Thomas v. General Motors Acceptance Corp., 176 Okla. 488, 56 P.2d 844; Perry v. Jenkins Music Co., 182 Okla. 51, 75 P.2d 1147. While this is true, yet a court is not thereby ordinarily authorized to render a judgment for debt in a replevin action. However, it appears from the record that no objection was made to the form of the verdict when it was returned, nor was any effort made to have the form of the verdict corrected. In view of this condition, we conclude that the objection, if otherwise good, was waived by the plaintiff. Ford v. Hall, 174 Okla. 100, 50 P.2d 291, and cases cited therein.

It is finally contended that the evidence is insufficient to sustain the verdict of the jury. The basis of this contention being that, since the jury failed to award the defendant any actual damages, a judgment for punitive damages was improper. Ordinarily this is correct, the exception being as stated in Lanyon v. Byus, 81 Okla. 203, 197 P. 162, as follows:

"Exemplary damages may be recovered by the defendant in an action in replevin where the plaintiff taking the property has been guilty of oppression, fraud, or malice."

See, also, Ray et al. v. Navarre et al., 47 Okla. 438, 147 P. 1019, and Shobe v. Sykes, supra.

In the case at bar it is undisputed that plaintiff went to the premises of the defendant during the month of December, 1933, and removed therefrom certain corn and cotton and disposed of a portion thereof. It is true that the plaintiff urges that this was done with the knowledge and consent of the defendant, but likewise the defendant contends that it was done over his protest and objection and with force and violence. It is further admitted that on January 22, 1934, the plaintiff again went to the premises of the defendant and attempted to remove therefrom the remainder of the property on which it claimed to have a lien by virtue of the chattel mortgage; that it actually loaded a portion of this property for removal and was only deterred from proceeding further by the objections of defendant. As said in McCracken v. Cline, 55 Okla. 37, 154 P. 1174:

" 'Conversion' is any distinct act of dominion wrongfully exerted over another's per-

sonal property in denial of or inconsistent with his rights therein."

See, also, McClintock v. Parish, 72 Okla. 260, 180 P. 689; Federal Nat. Bank of Shawnee v. Lindsey, 172 Okla. 30, 43 P.2d 1036.

The jury resolved all questions of fact in favor of the defendant and against the plaintiff. The evidence was amply sufficient to sustain its findings.

From an examination of the entire record, we are of the opinion that the cause was fairly tried, and the judgment should not be disturbed.

Judgment affirmed.

BAYLESS, C. J., and RILEY, OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., dissents.